Lessak, d. b. a. Massillon Road Hardware & Lumber Co., Appellee, *v.* Metropolitan Casualty Ins. Co. of New York, Appellant, et al.*

(No. 4714—Decided October 16, 1957.)

*Judgment affirmed, 168 Ohio St., 153.

*Messrs. Buckingham, Doolittle & Burroughs,* for appellee.
*Messrs. Kaufmann, Shama & Devany,* for appellant.

DOYLE, J.  William J. Lessak, engaged in business as the "Massillon Road Hardware and Lumber Company," commenced the case here under review in the Common Pleas Court of Summit County, in which he sought a declaratory judgment to determine whether a policy of liability insurance issued to him by the Metropolitan Casualty Insurance Company of New York provided coverage for liability arising out of a personal injury action brought against him and others by one Floyd Daniel Fouts, a minor.

The word "coverage," as used above, is meant to apply to an obligation of the insurance company to defend the assured Lessak in court, as well as to pay any judgment which may ultimately be rendered against him in the now pending personal injury action instituted by the said minor, Fouts, through his guardian *ad litem.*

The trial court found that the policy afforded full protection to the assured, and its judgment was duly entered.

From this judgment, appeal has been perfected to this court, and the appellant, in its quest of a reversal of the order, presents, *inter alia,* the following claims of error:

"1. The court erred in its interpretation of the insurance policy contract introduced in evidence as 'Appendix A' attached to the appellee's petition.

"2. The court erred in finding that the defendant insurance company has obligated itself to both defend W. J. Lessak * * * in the Court of Common Pleas of Summit County, Ohio, and to pay any damage judgment that may be finally awarded against William J. Lessak up to the stated limits of the liability.

"3. * * *

"4. * * *

"5. The court erred in not finding that under the terms of the insurance policy contract the defendant is under no obligation to defend William J. Lessak * * * in the Court of Common Pleas of Summit County, Ohio.

"6. * * *

"7. * * *"

This court has heretofore declared that "Under a policy of liability insurance in which the insurance company contracts to defend actions against its insured, the obligation to defend arises when there is filed a petition against the company's insured which pleads an action within the coverage of the policy. The obligation to defend exists regardless of the insurance company's ultimate liability to the insured." *First National Bank of Akron* v. *Ohio Casualty Ins. Co.*, 101 Ohio App., 37, 137 N. E. (2d), 770, paragraph 1 of syllabus.

We again declare the law to be as therein set forth. See also: *Socony-Vacuum Oil Co.* v. *Continental Casualty Co.*, 144 Ohio St., 382, 59 N. E. (2d), 199.

The propriety of an action for declaratory judgment to establish the obligations of an insurance company in cases of this nature has been settled in this state. In *Travelers Indemnity Co.* v. *Cochrane, Jr.*, 155 Ohio St., 305, 98 N. E. (2d), 840, it is stated:

"1. A controversy between an insurer and his insured under an automobile liability insurance policy as to the fact or extent of liability thereunder to persons injured as a result of the operation of the insured automobile or as to the insurer's obligation to defend the insured in an action for damages against him is an actual or justiciable controversy determinable by a declaratory judgment."

In the petition for a declaratory judgment, there is pleaded the action in tort previously filed against the insured Lessak, as well as the policy of liability insurance issued to Lessak. We are therefore called upon to examine the pleading in the tort action in the light of the policy of insurance, and determine whether the policy covers any liability which may attach to the insured.

The charge against the insured may be summarized as follows:

William J. Lessak, the owner and operator of a hardware store, negligently and in violation of a state statute, sold to one Lonnie St. Clair, a minor of the age of 13 years, at his said store, six packages of metal pellets known as BB's, to be used as ammunition for air guns; the ammunition was used by the said Lonnie St. Clair, and another minor of the age of 12 years,

in air rifles furnished them in violation of law by their legal custodians, in the one case by the mother and stepfather, and in the other case by an aunt and uncle (the legal guardians and custodians were each made party defendants); while the boys were using the guns loaded with the ammunition purchased from the insured, one of them, the said Lonnie St. Clair, ''negligently and carelessly caused said air gun to be discharged, and the pellet or BB with which the same was loaded was hurled through the air with great force and violence and struck'' Floyd Daniel Fouts, a minor of the age of 11 years, in the region of his right eye, injuring him severely.

The petition in tort continued by pleading various claims of negligence against the respective defendants—negligence of, and the violation of a statute by, the insured in selling the ammunition to the minor boy, and negligence of, and the violation of law by, the parents and custodians in furnishing the boys with air rifles.

Proceeding now to the policy of insurance issued to Lessak, the vendor of the ammunition, we find the following pertinent provisions:

''The Metropolitan Casualty Company of New York * * * does hereby agree with the insured * * * in consideration of the payment of the premium and of the statements contained in the declarations and subject to the limits of liability, exclusions, conditions and other items of this policy:

''Insuring Agreements

''I. Coverage A—Bodily Injury Liability

''To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services, because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person or persons, caused by accident and arising out of the hazards hereinafter defined.

''Coverage B—Property Damage Liability

'' * * *

''Definition of Hazards

''Division 1. Premises—Operations

''The ownership, maintenance or use, for the purposes

stated in the declarations, of the premises, and all operations during the policy period which are necessary or incidental to such purposes.

"Division 2. Elevators

"* * *

"Division 3. Products

"The handling or use of, the existence of any condition in or a warranty of goods or products manufactured, sold, handled or distributed by the named insured, other than equipment rented to or located for use of others but not sold, if the accident occurs after the insured has relinquished possession thereof to others and away from premises owned, rented or controlled by the insured or on premises for which the classification stated in Division 1 of the declarations or in the company's manual excludes any part of the foregoing; or operations, if the accident occurs after such operations have been completed or abandoned at the place of occurrence thereof and away from premises owned, rented or controlled by the insured, except (a) pick-up and delivery, (b) the existence of tools, uninstalled equipment and abandoned or unused materials, and (c) operations for which the classification stated in Division 1 of the declarations or in the company's manual specifically includes completed operations; provided, operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to a service or maintenance agreement.

"* * *

"Exclusions

"This policy does not apply:

"(a) Under Division 1 of the definition of hazards, * * * to liability with respect to which insurance is or can be afforded under Division 3 of the definition of hazards; or to operations on or from other premises which are owned, rented or controlled by the insured * * *."

It is observed that the insured was protected only under his policy against the hazards defined in "Division 1," supra, entitled "Premises—Operations." He had purchased no other policy protection.

We are therefore called upon to construe the language em-

ployed and determine whether the claimed liability of the insured to the injured boy, Fouts, as set forth in the petition, arises from a hazard included in the definition under said Division 1, Premises—Operations.

We are further called upon to determine the effect of the definition of "products" under Division 3, to ascertain whether the exclusion provision "(a)," supra, excludes a policy coverage for the delict pleaded against the insured.

Under Division 1, the insurance extends to "the ownership, maintenance and use" of the premises, including the buildings and structures thereon, "for the purposes stated in the declarations." The stated "purposes" in the declarations were for the operation of a "Retail Hardware Store" at "1601 Massillon Road, Akron, Ohio."

It is the contention of the insurance company that the claimed sale of air rifle ammunition by the insured to the boy St. Clair, which act it is claimed proximately resulted in injury to the boy Fouts, must be classified as a hazard that is covered, if at all, under the definition of "products," supra, and that therefore, under the "exclusion" provision, the insured is not protected by the instant policy.

On the other hand, the insured asserts that the hazard arose from store operations upon the premises, as defined in the policy, that the "products" coverage relates to a classification of hazards wholly distinct from the situation allegedly created by Lessak, the insured, which resulted in harm to the minor, Fouts, and that therefore the exclusionary clause is without application to this case.

As stated above, the question of coverage must be determined from the allegations in the petition, read in connection with the contract of insurance. The insuring contract before us insures against hazards, and, by the same token, the exclusion provision excludes hazards.

The hazard insured in the policy is "the ownership, maintenance or use * * * [of a retail hardware store], of the premises, and all operations during the policy period which are necessary or incidental to such purposes."

The negligence asserted against the insured was the negli-

gent sale of ammunition to a small boy contrary to law. This hazard obviously arose on the hardware store premises, was incident to the use of the premises, and was a part of the operation of the store. It was the sale of ammunition upon the store premises, to a small boy, which constitutes the gravamen of the charge in the petition, as distinguished from the sale of defective ammunition, breach of warranty, or other similar delicts which might be said to fall within the "products" hazard; and neither the place where the injury occurred nor the circumstances attendent thereto had any connection with the insured hazard which we are here discussing.

The petition, among the various claims of negligence against the several defendants, charges that the unlawful, negligent sale of ammunition to the child by the insured was a proximate cause of the plaintiff's injury.

If this claim is established upon trial, and damages are awarded, we here determine that the policy protects the insured, Lessak; and we further determine that, even if the claim ultimately is found to be groundless, it is the obligation of the insurer to "defend in" the insured's "name and behalf any suit against the insured alleging such injury or destruction * * *." ("II. Defense, Settlement * * *" provision in policy). The Court of Common Pleas therefore did not err in so finding.

It should be perhaps further observed, in connection with the declaration of insurer's liability made above, that there is no claim that the "product," which was the subject of the sale to the child, was defective, nor anything other than the article sought to be purchased.

As noted above, the offense charged was the negligent sale to a child, and there is nothing relative to the condition of the product itself involved in the case against the insured. If the ammunition, with which we are here concerned, had been sold by the insured to any of counsel in this litigation, surely no cause of action could have been made against the store proprietor. The claimed liability arises here from the alleged minority of the child who made the purchase from the insured.

See *Employers' Liability Assurance Corp.* v. *Youghiogheny & Ohio Coal Co.,* 214 F. (2d), 418 (1954), a case apply-

ing the law of Ohio to a contract of insurance in many respects similar to the one here under inspection.

The judgment entered by the Court of Common Pleas will be affirmed.

*Judgment affirmed.*

HUNSICKER, P. J., and STEVENS, J., concur.